## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ANIA RYNARZEWSKA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.:** |
| | § | |
| **THE CORPORATION OF MERCER** | § | _____ |
| **UNIVERSITY, d/b/a MERCER** | § | |
| **UNIVERSITY,** | § | |
| | § | |
| **Defendant.** | § | |
| _____ | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

1.

Dr. Ania Rynarzewska ("Dr. Rynarzewska" or "Plaintiff") files this Original Complaint against The Corporation of Mercer University d/b/a Mercer University ("Mercer" or "Defendant") alleging that Mercer has, in violation of state and federal law, discriminated against her on the basis of her sex and breached its employment agreement with her.

## <u>INTRODUCTION</u>

2.

Mercer denied Dr. Rynarzewska tenure and, as a consequence of the denial, terminated her employment at Mercer in 2022. Dr. Rynarzewska puts before this Court undisputed evidence of her scholarship, positive teaching evaluations,

KH742287.DOCX 8

contributions to Mercer, and a strong recommendation for tenure from a committee of her colleagues appointed by Mercer to examine her application.

3.

Mercer unreasonably denied her tenure without any objective justification, despite an impressive record and academic accomplishments that meet or exceed those of male colleagues who have been granted tenure. The denial was based on the recommendations of two individuals, whose stated reasons for opposing Dr. Rynarzewska's tenure are absurd, myopic, misinformed, and in flat contradiction of all written evidence. The denial effectively ended Dr. Rynarzewska's career at Mercer and negatively impacted her professional reputation.

4.

Dr. Rynarzewska started working at Mercer as a Visiting Professor in 2013 and was quickly promoted to the tenure-track position of Assistant Professor in 2014. Her teaching, research, and service earned her regular praise from her students, her colleagues, and Mercer's administration. Because she easily exceeded the criteria for tenure developed and published by Mercer, the committee specifically charged by Mercer with evaluating her tenure application recommended that she be granted tenure.

5.

Ignoring Dr. Rynarzewska's academic accomplishments, teaching talent, significant service contributions, and the recommendation of the tenure committee, Mercer acted on the toxic direction of Interim Dean Julie Petherbridge ("Dean Petherbridge") and Associate Dean Tammy Crutchfield ("Dean Crutchfield") who wrote letters to the Provost recommending that Dr. Rynarzewska be denied tenure.

6.

Those letters offered biased, demeaning, false, and patently pretextual explanations for what was in fact an act of gender discrimination. They also show that Deans Petherbridge and Crutchfield were retaliating against Dr. Rynarzewska for stating that she needed to care for her children and for raising the issue of the unequal pay between men and women in her department.

7.

A Mercer committee appointed to evaluate the process leading to denial of her tenure found that Dr. Rynarzewska's portfolio "contained evidence of positive performance, meeting all the criteria . . . for promotion and tenure" and noted that the decision was made on factors "not documented and . . . not available" for its review. *See* Exhibit [A], (the "Appeal Committee Report").

8.

By acting upon such letters, Mercer committed gender discrimination, in violation of federal and state law.

9.

By failing to evaluate Dr. Rynarzewska according to the terms stated by Mercer in its Faculty Handbook, Mercer also breached the employment agreement it had with Dr. Rynarzewska.

## JURISDICTION AND VENUE

10.

This action involves a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et sec., as amended, including the Pregnancy Discrimination Act, , includin As such, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

11.

This action also involves violations of state law, including the Georgia Equal Pay for Equal Work Act, OCGA § 34-5-3. It also involves a common law breach of contract claim. This Court's jurisdiction over such claims is invoked under 28 U.S.C. § 1367.

12.

Venue is proper within the Middle District of Georgia, Macon Division, pursuant to 28 U.S.C. § 1391, as the events establishing the basis Plaintiff's cause of action occurred in Macon, Georgia, which is within the Middle District of Georgia.

## **JURY DEMAND**

13.

Plaintiff hereby requests a jury trial.

## **PARTIES**

14.

Plaintiff Ania Rynarzewska is a Georgia domiciliary and a resident of Peach County, Georgia. At all relevant times, she was employed by Defendant Mercer University and worked primarily at the Macon campus along with some additional classes at the Atlanta campus. She hereby submits herself to the jurisdiction of this Court and may be served through her counsel of record in this case.

15.

Defendant Mercer University is a private educational entity with campuses in Atlanta, Georgia and Macon, Georgia, and a corporate headquarters in Macon, Bibb County, Georgia. It is subject to the jurisdiction of this Court and may be served with

process via its registered agent, Matthew Hall, at 1501 Mercer Univ. Dr., Macon, GA, 31207, through its attorney of record in this case.

## EXHAUSTION OF REMEDIES AND TIMELINESS OF SUIT

16.

Plaintiff properly filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 180 days of Defendant's illegal actions concerning her employment, alleging sex discrimination. *See* Exhibit [B] (the "EEOC Charge of Discrimination"). Mercer responded to the Charge of Discrimination on March 4, 2022. *See* Exhibit [C] (the "Mercer EEOC Position Statement").

17.

On August 9, 2022, Plaintiff received a "Notice of Right to Sue" letter from the EEOC. *See* Exhibit [D] (the "Right to Sue Letter"). This suit was filed within 90 days of Plaintiff's receipt of that notice and within two years from the date that Plaintiff filed a charge of discrimination.

18.

Plaintiff is in the process of filing an amended Charge of Discrimination with the EEOC alleging retaliation in addition to sex discrimination.

## FACTS

***Dr. Rynarzewska's faculty employment agreement clearly defined the requirements for promotion and tenure.***

19.

Dr. Rynarzewska has worked, taught, and conducted research in the field of marketing for more than a decade.  She focuses on consumer and corporate behavior in marketplace relationships, utilizing data science and statistical analysis to predict and model decision-making among both consumers and businesses.

20.

In 2012, Dr. Rynarzewska earned a Ph.D. in Mass Communications at Florida State University, with an emphasis in Marketing and Quantitative Tools. *See* Exhibit [E] ("Dr. Rynarzewska CV").

21.

Immediately after she earned her Ph.D., Corning Cable Systems (now Corning Optical Communications), a North Carolina-based subsidiary of Corning, Inc. that supplies companies around the world with telecommunications equipment, sought Dr. Rynarzewska's skills to help establish pricing to optimize its revenues in the European market.  Dr. Rynarzewska also contributed analysis to the company's 5-year strategic plan.

22.

Mercer hired Dr. Ania Rynarzewska in 2013 as a Visiting Professor in Mercer's Stetson-Hatcher School of Business ("SHSB") after a multi-year recruitment effort by then-Dean Steven McClung.[1] *See* Exhibit [F] ("Appointment Letters"). During her first year at Mercer, Dr. Rynarzewska continued working at Corning Cable Systems because the company had trouble replacing her; Corning asked her to create process documents for analyses she had created for the company and to train someone to take over her position.

23.

In 2014 Mercer promoted Dr. Rynarzewska to the rank of Assistant Professor, a "tenure-track" position in the Stetson Hatcher School of Business. *See id.* Her 2014 appointment letter indicates that the agreement is subject to "the policies and procedures of the University." *Id.* Those policies are described in the University Faculty Handbook. *See* Exhibit [G] ("Faculty Handbook") ("The *University Faculty Handbook* . . . sets forth the major policies and procedures affecting faculty members.") The terms of the Faculty Handbook "supersede collegiate policies and procedures[.]" *Id.*

---

[1] In 2020, Mercer's "Stetson School of Business and Economics" changed its name to the "Stetson-Hatcher School of Business." Although many of the events discussed in this Complaint occurred before the school's name change, the school will be referred to throughout by its current name.

24.

Per Mercer's Faculty Handbook, a tenure-track employee is subject to a "probationary period" of six years, and only after such period can he or she submit an application for tenure. *Id.* at 31. An employee may, upon request, temporarily pause his or her "tenure clock." As discussed below, Dr. Rynarzewska paused her tenure clock for one year, beginning in 2016. She was therefore eligible to apply in the fall of 2020 for tenure that would become effective in the fall of 2021. *See* Ex. F.

25.

A tenure-track employee whose application for tenure is denied is offered "a one-year terminal contract." *See* Ex. G at 32. Tenure at Mercer is, therefore, far from an incidental honor bestowed upon favored individuals. Tenure is a requirement for the continuation of a faculty member's employment at Mercer; its denial is akin to a termination.

26.

Mercer's Faculty Handbook explains both the purpose of tenure and the "standards and procedure" by which applicants for tenure are evaluated. "Tenure is . . . an important means to assure: 1) freedom of teaching, research, and extramural activities under the guidance of professional responsibility; and 2) a sufficient degree

of economic security to make teaching at Mercer University attractive to persons of high ability." Ex. G at 29.

27.

Because tenure is such an important aspect of Mercer's operations, it is granted or denied through a process that ensures fairness and equality during tenure evaluation. It functions to encourage the values and principles that Mercer is supposed to adhere to. Thus, the Handbook is clear about the basis of tenure awards:

> Tenure is based on merit. Merit is determined in the aggregate with emphasis on the following criteria:
> a. Quality of teaching and attention given to students as individuals.
> b. Breadth, depth, and variety of education and experience.
> c. Professional achievement and scholarship.
> d. Responsible participation in group deliberative processes.
> e. Professional responsibility and service to the school and community.

*Id.* at 31.

28.

Mercer also provides its tenure-track faculty with periodic reviews to identify whether they are on schedule and to ensure that they are meeting the criteria for achieving tenure. Periodic reviews give faculty the ability to correct course and get back on track for tenure. The Faculty Handbook provides:

> The procedures for periodic review of faculty leading to . . . tenure . . . are designed to assure the exercise of responsible professional judgment and to obtain the application of relevant criteria of evaluation to protect the individual from arbitrary or subjective evaluation. . . . The

faculty member shall be advised of the substantive standards generally
employed in decisions affecting . . . tenure.

*Id.* at 36-37.

29.

These periodic reviews include annual reviews and a more extensive "mid-
tenure review," during which a tenure-track employee submits her entire tenure file
for evaluation and suggestions to the Promotion and Tenure Committee. *Id.* As
discussed below, Dr. Rynarzewska's mid-tenure review was conducted in 2018.

**During her career at Mercer, Dr. Rynarzewska's performed in order to meet and
exceed the established standards for tenure.**

30.

In accordance with the stated criteria for tenure, Dr. Rynarzewska for the next
several years worked to become a respected teacher, mentor, colleague, scholar, and
active participant in Mercer's affairs.

31.

In most colleges and universities, tenure track faculty are evaluated based on
three general categories of performance: (1) scholarship; (2) teaching; and (3)
service, including service to both the institution and the community. As a faculty
member's career progresses, the allocation for each category changes in order to
prioritize and protect research time for junior professors.

32.

After a change in SHSB leadership from Dean Gilbert and Associate Dean McClung to Dean Petherbridge and Associate Dean Crutchfield, the allocation of work was changed to 50 percent teaching, 30 percent service, and 20 percent research.

33.

Dr. Rynarzewska was not informed of the reason for the change, but this was an unprecedented shift that materially disadvantaged Dr. Rynarzewska because it increased her teaching and service obligations, giving her less time for scholarly research. In the context of tenure, research productivity is given the most weight and this decision seemed specifically aimed to handicap Dr. Rynarzewska's tenure application.

34.

In her first year as a tenure-track professor, Dr. Rynarzewska was asked by then-Dean Susan Gilbert to develop a Master of Business Analytics program for Mercer. Dr. Rynarzewska created a proposal for the program, developed courses and then created and chaired a committee to get approval for the proposal from the faculty and the graduate council. She took over from then Associate Dean Michael Weber as director of the new program in its second year.

35.

While acting as director of the program, Dr. Rynarzewska continued teaching at both Mercer's Atlanta and Macon campuses. She was told by the administration that she had to teach an "overload" course—that is, a course in addition to the number of courses she was contracted to teach—in order to maintain her directorship.

36.

In January 2016, Dr. Rynarzewska gave birth to twins.  While Mercer formally offered six weeks of paid maternity leave, Dr. Rynarzewska was obligated to continue working during her leave and shortly after her pregnancy, including by directing students who participated in individual study.

37.

After the birth of her twins, Dr. Rynarzewska was advised by the administration to pause her tenure clock. She did so, but continued working throughout the year, teaching classes at both the Atlanta and Macon campuses.

38.

Later in 2016, she chose to relinquish her position as Director of the Business Analytics program in order to focus on research, a key component of the "merit" evaluated during the tenure process. She worked closely with then-Dean Gilbert and her husband Jeff Gilbert to ensure a smooth transition for the program. Dean

Petherbridge, who at the time had no role in the program, later concocted a false story about Dr. Rynarzewska's relinquishment of the directorship in her letter to the Provost.

39.

In the two years after she stepped down from her position as director, Dr. Rynarzewska was incredibly productive and published four research articles, and in the years preceding her application for tenure, she published or was accepted for publication several others. *See* Ex. E. Each member of the Mercer faculty was required to publish roughly two articles every five years in order to retain his or her designation as a "scholarly academic. He or she was also required to published at least three journal articles and complete at least three other scholarly activities, such as conferences presentations, or publication of work as book chapters. As Dr. Rynarzewska's CV clearly demonstrates, she far exceeded these expectations.

40.

In 2018, Dr. Rynarzewska created Lux Leonis, a hand-made soap business, for a new Mercer initiative called the Mercer Innovation Center, whose purposes were to bring faculty and entrepreneurs together and to create experiential learning opportunities for Mercer students. The creation of Lux Leonis led to internship opportunities for a multitude of Mercer students and was frequently used in Mercer's own marketing efforts.

41.

Dr. Rynarzewska was regularly asked by SHSB administrators to teach courses in addition to her usual workload. Her willingness to do so was frequently recognized and applauded by her colleagues and students for filling gaps in the curriculum when others would not. Dean Petherbridge, however, falsely and insultingly referred to Dr. Rynarzewska's "need to teach overloads" in her letter to the Provost. *See* Exhibit [H] ("Petherbridge Provost Letter").

42.

In summer 2019 Dean Susan Gilbert stepped down and was replaced by Julie Petherbridge, who became Interim Dean.  In 2020 Associate Dean McClung also stepped down and was replaced by Tammy Crutchfield.

43.

After Julie Petherbridge and Tammy Crutchfield became Deans, Dr. Rynarzewska continued her research, teaching, and service to Mercer. She attended Mercer events, wrote letters of recommendation for students, provided internships for students, and continued to teach extra courses when requested.

44.

In 2020, Associate Dean Tammy Crutchfield conducted Dr. Rynarzewska's annual performance evaluation, which evaluation Dr. Rynarzewska's activities for the calendar year of 2019. Dean Crutchfield stated in that evaluation that Dr.

Rynarzewska "exceeds expectations." That evaluation was the last one received by Dr. Rynarzewska before being denied tenure in 2021.[2] *See* Ex. [I] ("Performance Evaluations") at 3.

45.

In early 2020, Dean Crutchfield asked Dr. Rynarzewska to take over from her as lead mentor for Mercer's American Marketing Association (AMA) club. Dr. Rynarzewska stated that she was willing to do so but preferred to perform her duties during the daytime, since her childcare facility closed at 6:00pm and she needed to be home with her twins during late afternoons and evenings.

46.

Further responsibilities were added to Dr. Rynarzewska's portfolio in addition to her assignment to supervise the AMA club, (rather than mentor) which she took on because a male faculty member and Tammy Crutchfield) had been unable or unwilling to regularly attend. Dr. Rynarzewska was also asked to assist with the Sports Marketing and Analytics Club (SMAC). Dean Crutchfield ignores these contributions and grossly mischaracterizes the significance of the roles in her letter to the Provost recommending that Dr. Rynarzewska be denied tenure. *See* Ex. H at 1.

---

[2] Dean Crutchfield conducted another evaluation in 2020, but she has repeatedly refused to show the evaluation to Dr. Rynarzewska. She has stated that Dean Petherbridge has instructed her not to disclose it to Dr. Rynarzewska.

47.

In the spring of 2020, Dr. Rynarzewska became aware a male colleague was being paid more money even though he was doing the same amount of work she was doing. In response, Dean Petherbridge informed Dr. Rynarzewska that she would receive a "market adjustment" in August 2020. Dr. Rynarzewska shortly thereafter learned of another male colleague who, on information and belief, was paid the same as her but required to do less work; he, unlike her, was allowed to teach fewer classes in return for participating in a school club. Dean Petherbridge later cited Dr. Rynarzewska's complaints about pay and workload disparities as examples of "disruptive" behavior.

48.

In fall of 2020, Dr. Rynarzewska began relaying students' concerns about their safety in the face of the Covid pandemic to Dean Petherbridge. Dean Petherbridge cited these communications in her letter to the Provost recommending that Dr. Rynarzewska be denied tenure, pointing to them as showing a "lack of support for upper university leadership and disruption of the School of business." Ex. H at 3.  Similarly, Dean Crutchfield referred to Dr. Rynarzewska "over the year and a half that I have led in the associate dean's office" as "argumentative when collaborating with leadership." *Id.*

49.

In 2019, Dr. Craig McMahan, director of Mercer on Mission, contacted Dr. Rynarzewska to recruit her into the program. Mercer on Mission combines study abroad and service-learning to provide life-changing experiences for students through academic instruction, cultural immersion, applied research, meaningful service and spiritual reflection.

50.

A businessperson who was a former student of Dr. Rynarzewska and a former participant in the Mercer on Mission program had told Dr. McMahan that Dr. Rynarzewska would be a perfect faculty mentor for a new program due to her business experience, her skill at mentoring students, and her willingness and ability to take on new projects. Dr. Rynarzewska worked with Mr. McMahan to develop a plan to teach soapmaking to Roma communities in Greece, thereby creating for them a new source of income. Dr. Rynarzewska was scheduled to make an exploratory trip to Greece in the summer of 2020. Unfortunately the trip was cancelled due to health concerns relating to the global pandemic.

51.

In the spring of 2020, Dean Petherbridge asked SHSB faculty to develop summer courses to boost school finances. In response, Dr. Rynarzewska taught three

summer classes, including a new course on Crisis Management that she developed upon the specific request of Dean Petherbridge,.

### The Promotion and Tenure Committee states that Dr. Rynarzewska is a stellar scholar, teacher, and colleague who exceeds the criteria for tenure.

52.

In the spring of 2020, Mercer offered its tenure-track faculty the option to pause their tenure clocks, as the pandemic had forced faculty into the difficult and time-consuming work of transitioning to online teaching. Dr. Rynarzewska asked Associate Dean Crutchfield for advice on whether she should wait. Dean Crutchfield stated that "from [her] point of view, it would be better to go ahead and secure tenure," and she recommended consultation with Dean Petherbridge. *See* Exhibit [J] ("Crutchfield Text"). Dean Petherbridge did not reply to Dr. Rynarzewska's emails. Dr. Rynarzewska decided to submit her application.

53.

Dr. Rynarzewska submitted her application for tenure in November 2020. She was confident about her application, as Dr. Rynarzewska had received positive annual performance evaluations each year of her probationary period, including Dean Crutchfield's 2020 evaluation (covering calendar year 2019), the most recent evaluation available to her. *See* Ex. R, Annual Evaluation 2019. The committee that examined her "mid-tenure review" materials stated that she "excels in the

classroom," "is always available to serve productively on committees and assist in the administration of the organization," "has been productive as a researcher" with a publication record that would be "strong work for any academic at this career stage," "is a net asset to [SHSB] in all pertinent responsibility areas (teaching, research, and service)," and "is on track for a positive recommendation for tenure in each of these areas, provided the given recommendations are followed." *See* Exhibit [K] ("Mid Tenure Review Summary"). Dr. Rynarzewska had followed the Committee's recommendations, which were in large part that she continue on the path she was on.[3]

54.

In addition to the materials required for her tenure application, Dr. Rynarzewska submitted letters from individuals in her field who could attest that Dr. Rynarzewska's research was held in high regard within her field. These individuals included Dr. Kristine Johnson, a Professor at Rowan University (Exhibit [L]

---

[3] It is typical in academia for a mid-tenure review letter to set forth recommendations to any faculty member in order to provide transparency as to what that individual needs to accomplish to receive tenure. For Dr. Rynarzewksa, those recommendations included that she make minor tweaks to her teaching such as adjusting her office hour availability and "utilizing the full range of grades," that she reach out to entities off campus to provide our students with opportunities to directly interact with firms in the area of sports business and marketing," "seek out opportunities to serve as a referee for professional organizations . . . and/or organize and chair sessions at [professional] meetings." Ex. K, at 1-2. All other recommendations were that Dr. Rynarzewska continue doing what she was doing: she was told to "continue to demonstrate excellence in the classroom," "continue to engage in the fine work she has been doing in this [service to students] area," "continu[e] to seek opportunities for leadership in [SHSB]," and that she "continue [her] publication record." *Id.*

"Johnson Letter"); Dr. Michael McCall, a Professor at Michigan State University, and Steven McClung, a former Dean at Mercer and at the time a Dean at Jacksonville State University. Those letters emphasized Dr. Rynarzewska's the high level of respect her colleagues had for her as a teacher, a scholar, and an excellent collaborator on research projects.

55.

The tenure application was first evaluated by a Promotion and Tenure Committee appointed to review her application and make a recommendation to the President.  The Committee was made up of tenured SHSB faculty from both the Atlanta and the Macon campuses, all of whom had worked closely with Dr. Rynarzewska.

56.

The Promotion and Tenure Committee observed  that Dr. Rynarzewska had excellent student evaluations, that she was considered by students to be "engaging, flexible, intelligent, caring, funny, practical, dedicated, knowledgeable, and passionate," that she "ha[d] demonstrated depth and breadth in teaching, having taught 16 different course[s] . . . across Macon and Atlanta campuses, multiple degree programs . . . ,  different teaching formats . . . , and in undergraduate and graduate program[s]"; and that she created syllabi that were "detailed, well-thought-out, . . . capture the spirit of the intended learning outcomes" and contain "detailed

information about practical and enriching class projects, especially at the graduate level." *See* Ex. H., citing to the Promotion and Tenure Committee's recommendations.

57.

The Committee also lauded Dr. Rynarzewska's service to students as "outstanding," noting that in addition to her teaching she had been "extensively engaged with students across multiple dimensions such as mentorships, offering internships through her business (800 documented hours of internships offered between 2019 and 2020), being a liaison of two student clubs (Marketing and Sports Marketing Analytics), and offering innumerable letters of recommendations, among other activities." *Id.* at 2.

58.

Similarly, the Committee found that Dr. Rynarzewska went "beyond what had been requested of her by SHSB leadership" and that she "volunteers extensively." It noted her service as the Program Director for the Master of Science in Business Analytics (MSBA), for which she had been the driving force, her service on multiple committees, and her creation of twelve new courses for Mercer, "eight of which are included in the catalog." *Id.*

59.

The Committee called Dr. Rynarzewska's scholarship "excellent," noting her "six refereed publications while at Mercer" and her "demonstrated . . . ability to publish with others via co-authoring as well as single authorship," and it "commend[ed] her intellectual contribution efforts, especially given that she took on administrative duties very early on in her academic career." *Id.* at 3.

60.

Finally, the Committee stated that, "as indicated throughout this report, Dr. Rynarzewska is an active and enthusiastic participant in SHSB and university-wide functions and exhibits collegial values within SHSB." *Id.*

61.

In early 2021, Dr. Rynarzewska had a tenure interview with Dean Petherbridge as well as Provost Scott Davis and President William Underwood. No concerns about her application were raised.

62.

Notwithstanding the Committee's strong recommendation, Dr. Rynarzewska was informed on April 16, 2021, via a Zoom call that she was being denied tenure. At that time, she received no information about the basis of her tenure denial

63.

Dr. Rynarzewska pressed Dean Petherbridge for more information about her tenure denial, but Dean Petherbridge refused to provide any information, claiming falsely that she had nothing to do with the decision. Only after multiple requests did Dr. Petherbridge finally, on May 4, 2021, issue a letter informing Dr. Rynarzewska that "[t]he reasons that contributed to this decision were your lack of constructive engagement and participation in group deliberative processes within the School of Business, and your failure to demonstrate professional collegiality in your duties as a member of the faculty." *See* Exhibit [M] ("Denial Letter").

64.

The letter of explanation sent to her in April by Dean Petherbridge did not cite any disciplinary actions at Mercer, any code of professional conduct, or any plausible source for its assertion that Dr. Rynarzewska failed to "demonstrate professional collegiality." *Id.* In fact, the reference to "professional collegiality" in the letter of explanation betrays either its author's ignorance of Mercer's stated tenure policies or her desire to evade them.

65.

To the contrary, "Collegiality" at Mercer was eliminated and replaced by "Engagement" as a criterion for tenure determinations in 2017 because it was too difficult to define and therefore opened a door for personal and improper motivations

to enter the process.  Dr. James Hunt, who was then on the Promotion and Tenure Committee and who actually drafted the new standard, stated that the committee worried that "collegiality" would "become some kind of catch-all justification to deny tenure if one or more members of the [tenure] committee did not 'like' the candidate." *See* Exhibit [N] ("Hunt Letter").

66.

That is exactly what has happened here: instead of applying the agreed-upon criteria described in Mercer's Faculty Handbook, Dean Petherbridge referred to the rejected criterion of "collegiality" to disguise her own improper motivations for preventing Dr. Rynarzewska from gaining tenure.

67.

In any event, Dr. Rynarzewska exhibited "collegiality" throughout her time at Mercer, a fact recognized by the people best placed to observe it: her colleagues. The Committee charged with Dr. Rynarzewska's mid-tenure review explicitly stated that Dr. Rynarzewska "exhibits collegial values." *Id.* Dr. Hunt, the director of the graduate programs at SHSB who occupied the office next to hers, stated that

> if . . . collegiality means acting in with [sic] a spirit of cooperation in the school and university, Dr. Rynarzewska clearly meets [that] definition. . . . Daily and weekly I have heard her participation in many enthusiastic and engaged conversations with school administration, staff, faculty, and students. Further . . . I can confirm she has always been willing to step in to teach a course, or an extra course, even at the last minute. This is not true of other faculty, tenured or untenured. In doing so she has helped the school, her colleagues, and our students. . .

. Based on [my eight years at SHSB] I know she compares well to other faculty in the business school, whether the criteria used is the rejected on of "Collegiality" or the current rule of "Engagement."

*Id.*

### An appeals committee found no support in the record for Dr. Rynarzewska's tenure denial.

68.

Dr. Rynarzewska, confused by an explanation that had no basis in reality and justifiably believing the application process itself had been compromised, appealed the decision on the basis of "inadequate consideration," following a procedure described in Mercer's Faculty Handbook. *See* Exhibit [O] ("Rynarzewska Appeal Submission").

69.

An Appeal Committee was appointed to evaluate the decision process and determine whether Dr. Rynarzewska was given "adequate consideration." It noted at the outset that Dr. Rynarzewska's tenure denial suffered from "a lack of transparency and support," that her portfolio "contained evidence of positive performance, meeting all the criteria . . . for promotion and tenure," and that the portfolio was itself preceded by "a positive mid-tenure review and an 'exceeds expectation' for the last recorded performance evaluation."[4] Ex. A, at 1-2.   The

---

[4] It is unclear whether the Appeal Committee was referring to Dr. Rynarzewska's 2019 evaluation or her 2020 evaluation, which has never been disclosed to her. *See supra* ¶ 42 n.2.

Committee stated that any "[o]ther factors" that went into the decision were "not documented and . . . not available" for its review, while noting that the decision seemed to be based at least in part on "the applicant's capability to be a positive contributor to university governance," for which it did not have "access to additional documents or information." *Id.*

70.

The Committee determined that Dr. Rynarzewska's application had been given "adequate consideration"—in other words, that the denial had "in accordance with the University [Faculty] Handbook." However, in a confession of its inability to find any information whatsoever that could justify denying tenure to Dr. Rynarzewska, the Committee concluded by recommending that

> measures to improve clarity and transparency of the process be considered. Specifically, the Committee recommends that timely and appropriate documentation be maintained relating to issues involving faculty behavior not in accordance with Mercer University's policies of governance for standard of conduct and be conveyed to the applicant prior the final tenure decision.

*Id.* at 3.

71.

The Appeal Committee had clearly observed the absolute lack of documentation of any problems with Dr. Rynarzewska's "behavior" and the complete failure to "convey" any such problems to Dr. Rynarzewska. *Id.*

72.

As the Appeal Committee was surely aware, Dr. Rynarzewska's denial of tenure was based entirely on the recommendations of Dean Petherbridge and Associate Dean Crutchfield, which consist entirely of false, demeaning, and unsupported accusations. Those two letters constitute the sole bases of Dr. Rynarzewska's termination and are at the heart of Dr. Rynarzewska's allegations of gender discrimination, retaliation, and breach of her employment agreement. Mercer has admitted as much, stating in its Response to Dr. Rynarzewska's EEOC filing that Dr. Rynarzewska's application was "denied at the Dean's level." Ex. C at 6.

73.

The accusations contained in the two letters, as the Committee notes, were not supported by any "timely and appropriate documentation," were flatly contradicted by evidence of Dr. Rynarzewska's portfolio and all prior performance reviews, and were certainly never "conveyed to the applicant prior to the final tenure decision." Ex. A at 3. Significantly, they also contain substantial evidence of gender discrimination and of a desire to retaliate against Dr. Rynarzewska for prior remarks about gender inequities at the school.

### *Associate Dean Crutchfield's Bogus Letter*

74.

Associate Dean Crutchfield wrote an undated "letter of concern" about Dr. Rynarzewska's "attitude and actions in this late transition period." She states:

> Ania has proven over the year and a half that I have led in the associate dean's office that she lacks the leadership skills and commitment to the university of the students. She has proven over and over that she is not a team member and is interested in contributing only in the areas that personally benefit her. It is a problem for which I have had serious conversations with her.

*See* Exhibit [P] ("Crutchfield Letter"). No part of this statement is true; the accusations about Dr. Rynarzewska are false and were on no occasion the subject of any "serious conversations."

75.

Dean Crutchfield's letter is full of petty and manufactured accusations that she claims prevent her from supporting Dr. Rynarzewska "in good conscience." *Id.* Dean Crutchfield cites Dr. Rynarzewska's declining to take over leadership of the AMA, with which Dr. Rynarzewska "has yet to involve herself" and for which Dean Crutchfield herself "continue[s] to hold full responsibility"—apparently against her will. *Id.*

76.

Dr. Crutchfield then describes Dr. Rynarzewska's desire to be called "Dr." in formal communications from Mercer, as her male colleagues were, as an example

of "rude" behavior. Finally, she criticizes Dr. Rynarzewska's attitude towards her internship program, which she grants provides a "positive experience for the students," because Dr. Rynarzewska "perceives this role to be her service to the students." *Id.* Dean Crutchfield is presumably aware that "service to the school and community" and "attention given to students" are part of Dr. Rynarzewska's job at Mercer, and are among the standards for tenure that she and Mercer are supposed to uphold. Nonetheless, she faults her for them.

### *Dean Petherbridge's Demeaning Falsifications*

77.

Then-Interim Dean Julie Petherbridge also wrote a letter to the Provost recommending that Dr. Rynarzewska be denied tenure. *See* Ex. H.

78.

Dean Petherbridge claimed a "minor concern regarding some low students' evaluations and grades that seem to be skewed towards A/B" in spite of clear evidence—which she begrudgingly acknowledges—of high regard of her teaching by both students and colleagues. *Id.* She then states that Dr. Rynarzewska "started a for-profit business" under the auspices of the school and "exploited" students by giving them "menial tasks," in spite of the school's constant commendation of Dr. Rynarzewska's program and her mentorship of interns. *Id.* Dean Petherbridge even makes the false assertion that the interns were paid, a statement betraying Dean

Petherbridge's desire to criticize Dr. Rynarzewska in spite of a complete lack of basic information. *Id.*

79.

Dean Petherbridge further states that Dr. Rynarzewska was replaced as Program Director for the Master of Science in Business Analytics because of her "lack of organizational skills." *Id.* The comment is absurd, given that it was Dr. Rynarzewska who developed the program and gained approval for it before becoming its director after replacing the associate dean, Michael Weber, (then) associate dean on Atlanta campus. It is demonstrably false: Dr. Rynarzewska resigned and worked with the administration to ensure a smooth transition for the program. Given that Dr. Rynarzewska resigned in order to better balance the demands of motherhood and research, it is also discriminatory.

80.

Dean Petherbridge also essentially admits that she is retaliating against Dr. Rynarzewska for her complaints about the disparity between her and male colleagues' salaries. Dean Petherbridge cites Dr. Rynarzewska's comments about her "base pay not being in line with the other marketing faculty" as evidence that she "has consistently communicated her lack of support for leadership within the School of Business and upper leadership in the University. *Id.*

81.

Going to great lengths to weaken and debase Dr. Rynarzewska, Dean Petherbridge further states that Dr. Rynarzewska "refused" to lead the AMA. In doing so she has intentionally and illegally mis-characterized Dr. Rynarzewska's desire to care for her children as a failure of "engagement." According to the emails that Dean Petherbridge herself submitted to the Provost as evidence that she is "disruptive" and had a "lack of support for upper university leadership," Dr. Rynarzewska wrote to Dean Petherbridge in response to requests about AMA that she would "need guidelines" and that she:

> also cannot travel and do late afternoons. These are my simple life limitations because of children and no village to support me. My husband doesn't get home till 9-10 pm from base and rehabbing.

*Id.* at 17. In a subsequent email she said she "agreed to AMA but it has to be manag[e]able with my life (no late afternoon)[.]" *Id.* at 15.

82.

Dean Petherbridge's characterization of this conversation as a "refusal" is misleading and constitutes gender discrimination. *Id.*

### *Mercer is Responsible for Discriminatory Behavior at Its Mercer Campus*

83.

Mercer has discriminated against Dr. Rynarzewska on the basis of her sex.

84.

As detailed above, Mercer has allowed the subjective, discriminatory biases of Deans Petherbridge and Crutchfield to infect the tenure application process, in contradiction of its stated policies.

85.

During her employment, Dr. Rynarzewska was treated differently than male employees. She was paid less her male colleagues. Unlike her male colleagues, she was not given any reduction in her teaching load in return for her service to SHSB. Even when she served as director for the MSBA, she was, unlike her male colleagues in director positions, required to teach an overload course. Unlike her male colleagues, she was punished for any perceived unwillingness to give her time to student clubs. Unlike her male colleagues, her participation in meetings has been characterized as "rude" and "disruptive."

86.

In spite of unequal treatment, Dr. Rynarzewska was highly successful as a teacher, colleague, and scholar, and earned a strong recommendation from the Tenure and Promotion Committee. Mercer, however, subjected Dr. Rynarzewska to a higher level of scrutiny than her male colleagues had been subjected to when applying for tenure. She consistently outperformed her male counterparts. Moreover, her male colleagues—all of whom, it should be noted, wholeheartedly supported her

own tenure application—have been granted tenure despite having only equal or lower qualifications.

87.

Mercer has engaged in a pattern of discrimination that has led to a shocking and embarrassing imbalance in the numbers of men and women at its Macon Campus business school being granted tenure. Associate Dean Tammy Crutchfield, who was awarded tenure some 19 years ago, is herself the last woman at the Macon Campus to be granted tenure.

### *Dr. Rynarzewska suffers professional consequences from her tenure denial, even as her work is recognized as an outstanding contributor to her field.*

88.

After being denied tenure by Mercer, Dr. Rynarzewska sought employment. Her ability to find work was hampered, as most schools would seek input and recommendations from current SHSB administration – Dean Petherbridge and Associate Dean Crutchfield.

89.

Dr. Rynarzewska secured employment at Georgia College and State University. Her pay is far lower than what she would be earning had she been granted tenure, and if the discriminatory conduct of individuals who remain at Mercer had not limited her ability to apply widely for employment.

90.

In 2021, Dr. Rynarzewska was nominated by the Assistant Provost and Dean of Florida State University, where she attended college and earned her Ph.D., for the "Grad Made Good" Award, which recognizes the accomplishments of notable alumni who have pushed boundaries and redefined standards within their respective fields.  *See* Exhibit [Q] ("FSU Nomination Letters").

## CAUSES OF ACTION

### COUNT I
### SEX DISCRIMINATION, IN VIOLATION OF TITLE VII

91.

Dr. Rynarzewska reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each cause of action is pled in addition or in the alternative to the others.

92.

Dr. Rynarzewska was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec 2000e et seq., as amended ("Title VII").

93.

Mercer is an employer within the meaning of Title VII.

94.

Mercer violated federal law, including Title VII, by discriminating against Dr. Rynarzewska by because of her sex. Title VII specifically provides that discrimination "because of sex" includes (but is not limited to) discrimination "on the basis of pregnancy, childbirth, or related medical conditions." Title VII also establishes that women affected by pregnancy, childbirth, or related medical conditions shall be treated the same as anyone else for all employment-related purposes. Mercer discriminated against Dr. Rynarzewska on the basis of her sex and failed to treat her the same way it treated male applicants for tenure. Mercer's actions toward Dr. Rynarzewska that show its discriminatory purpose on the basis of sex include 1) its blatantly incorrect labeling of her decision to step down as director of the Business Analytics program, which was voluntary and based on a desire to devote time to Dr. Rynarzewska's research and young children and research, as based on "poor organizational ability," 2) its characterization of Dr. Rynarzewska's desire to be addressed in the same fashion as her male colleagues as an example of "rude" behavior, and 3) its requirement that Dr. Rynarzewska, unlike her male colleagues, was required to lead a particular club.

95.

Mercer's actions have also led to a disparate impact on its female employees. It appears that in the last 19 years, no females have been granted tenure in business

school at Mercer's Macon campus. Mercer, perhaps embarrassed about the numbers at Macon, has offered up system-wide data on tenure applications. System-wide numbers only obscure the Macon data behind the large numbers of applications at its Atlanta campus, hiding a sexist, discriminatory pattern of hiring and retention at its Macon campus.

96.

As a result of Mercer's discriminatory practices, Dr. Rynarzewska has suffered damages, including pain and suffering, damage to reputation, loss of past and future income and loss of future employment opportunities.

**COUNT II**
**GEORGIA'S EQUAL PAY FOR EQUAL WORK ACT**

97.

Dr. Rynarzewska reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each cause of action is pled in addition or in the alternative to the others.

98.

Mercer paid male employees more than Dr. Rynarzewska from her hiring in 2013 until at least the fall of 2020, when she was given a pay increase as an "equalizer."

99.

After fall of 2020, Mercer paid male employees the same amount as Dr. Ania Rynarzewska in spite of their being required to do less work.

100.

In doing so, Mercer has violated paid Dr. Rynarzewska "at a rate less than the rate at which [it] pays wages to employees of the opposite sex in such establishment for equal work in jobs which require equal skill, effort, and responsibility and which are performed under similar working conditions," in violation of Georgia's Equal Pay for Equal Work Act, OCGA § 34-5-3.

101.

As a result of Mercer's pay violations, Dr. Rynarzewska has suffered compensatory and other damages, including loss of past and future income and loss of future employment opportunities.

## COUNT III
## BREACH OF CONTRACT

102.

Dr. Rynarzewska reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each cause of action is pled in addition or in the alternative to the others.

103.

Dr. Rynarzewska and Mercer entered into employment contracts each year of Dr. Rynarzewska's employment. *See* Ex. F, Appointment Letters. Those contracts incorporated the terms of Mercer's Faculty Handbook and the SHSB's Faculty Handbook, and thus both parties were bound by its terms. *Supra* at ¶ 21. Dr. Rynarzewska agreed to provide a benefit to Mercer through her research, teaching, and service to students and other members of the faculty. In addition to monetary compensation and benefits, Mercer provided promises about how and when Dr. Rynarzewska would be evaluated for long-term employment. *See id.*

104.

Mercer breached those contracts when it failed to apply the "relevant criteria of evaluation" described in the Faculty Handbook and instead terminated her for discriminatory reasons. Ex. G at 36-37; *see also supra* ¶ 61 *et seq.* It allowed "arbitrary [and] subjective" factors to govern the process, in contravention of its Faculty Handbook. *Id.*

105.

Mercer has also breached its obligations of good faith and fair dealing. The tenure application process was poisoned by dishonest statements about Dr. Rynarzewska. Moreover, Mercer has at times refused to disclose relevant information to Dr. Rynarzewska, including the results of her teaching evaluation

and, until weeks of pressure from Dr. Rynarzewska, any reasons at all for her tenure denial. *See supra* ¶ 42 n.2, ¶ 62.

### 106.

As a result of Mercer's breach, Dr. Rynarzewska has suffered damages, including loss of past and future income and loss of future employment opportunities.

## DAMAGES

### 107.

As a result of Mercer's violations of law, including Title VII and Georgia's Equal Pay for Equal Work statute, Dr. Rynarzewska has suffered actual damages in the form of lost compensation, wages, benefits and other economic damages (past and future).

### 108.

Dr. Rynarzewska has also suffered compensatory damages, including loss of standing in the community, damage to reputation, loss of career advancement, emotional pain and suffering, loss of enjoyment of life, mental anguish and other losses.

### 109.

Because Defendant's actions constitute willful misconduct, malice, wantonness, oppression, and exhibit an entire want of care which raises the

presumption of conscious indifference to consequences, there is no cap on the punitive damages Plaintiff may recover.

110.

Pursuant to O.C.G.A. § 51-12-5.1 and 42 U.S.C. § 1981a(a)(1), Defendant is liable to Plaintiff for punitive damages to punish, penalize, and deter the behavior detailed herein in an amount to be proven at trial.

111.

As a result of Mercer's violations of law, Mr. Rynarzewska requests the Court to enter an order for all actual, nominal, economic, compensatory, liquidated, and other damages or remedies, equitable, statutory or otherwise, and attorney fees, expert fees, expenses and costs, that Dr. Rynarzewska proves are appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Dr. Rynarzewska respectfully prays that Mercer be cited and called to answer, and that on final judgment Dr. Rynarzewska be granted relief under state and federal law, including:

a)   Damages for lost wages and benefits, past and future;

b)   Compensatory damages;

c)   Liquidated damages;

d)   Damages for damage to reputation, emotional distress and mental anguish, past and future;

e)   Punitive damages;

f)   Equitable remedies, including tenure and promotion;

g)   Attorney fees, expert fees, expenses and costs of suit;

h)   Interest allowed by law;

i)   General damages;

j)   Special damages;

k)   Nominal damages;

l)   An order requiring Mercer to change and cease using its employment and tenure policies to discriminate against female employees generally; and

m)   Such other and further relief that is proven to be appropriate.

Respectfully submitted, this 7th day of November 2022.

                                        **KREVOLIN & HORST, LLC**
                                        */s/ Halsey G. Knapp, Jr.*
                                        Halsey G. Knapp, Jr.
                                        Georgia Bar No. 425320
                                        Jessica G. Cino
                                        Georgia Bar No. 577837

1201 W. Peachtree Street, NW
3250 One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
hknapp@khlawfirm.com
cino@khlawfirm.com
*attorneys for plaintiff*